UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 10-175-GWU


STEVE WARREN VOYLES,                                              PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

Steve Voyles brought this action to obtain judicial review of an unfavorable

administrative decision on his applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

  1.    Is the claimant currently engaged in substantial gainful activity?
         If so, the claimant is not disabled and the claim is denied.

  2.    If the claimant is not currently engaged in substantial gainful
         activity, does he have any "severe" impairment or combination
         of impairments--i.e., any impairments significantly limiting his
         physical or mental ability to do basic work activities?  If not, a
         finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine
        whether the claimant's severe impairment(s) or combination of
        impairments meets or equals in severity an impairment listed
        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of
        Impairments).  If so, disability is conclusively presumed and
        benefits are awarded.

4.      At the fourth step the Commissioner must determine whether
        the claimant retains the residual functional capacity to perform
        the physical and mental demands of his past relevant work.  If
        so, the claimant is not disabled and the claim is denied.  If the
        plaintiff carries this burden, a prima facie case of disability is
        established.

5.      If the plaintiff has carried his burden of proof through the first
        four steps, at the fifth step the burden shifts to the
        Commissioner to show that the claimant can perform any other
        substantial gainful activity which exists in the national
        economy, considering his residual functional capacity, age,
        education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had.  E.g.,  Faucher
v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2
and analyze factors such as residual functional capacity, age, education and work
experience.

One of the residual functional capacity levels used in the guidelines, called
"light" level work, involves lifting no more than twenty pounds at a time with frequent
lifting or carrying of objects weighing up to ten pounds; a job is listed in this category
if it encompasses a great deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls; by definition,
a person capable of this level of activity must have the ability to do substantially all
these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having
the capacity to lift no more than ten pounds at a time and occasionally lift or carry
small articles and an occasional amount of walking and standing.  20 C.F.R. §
404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly
diminishes his capacity to work, but does not manifest itself as a limitation on
strength, for example, where a claimant suffers from a mental illness . . .
manipulative restrictions  .  .  .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Voyles, a 44-year-old former security guard, gas station clerk, cashier, cook/dishwasher, factory worker, forklift operator, and stocker with a high school education, suffered from impairments related to right eye blindness and the residuals of a right hand work-related injury.  (Tr. 102, 108).   Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 105).  Since the ALJ found that the claimant could

return to his past work as a security guard, he could not be considered totally disabled.  (Tr. 108-109).  In the alternative, the ALJ also found that a significant number of other jobs could still be performed.  (Tr. 108).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Voyles could return to his past relevant work as a security guard, the ALJ relied upon the opinion of Vocational Expert Joyce Forrest.  The hypothetical question presented by the ALJ included an exertional restriction to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to use push or pull hand controls with the dominant right upper extremity; (2) an inability to ever crawl, climb ladders or ropes, and handle or finger with right dominant hand; (3) an inability to ever perform work requiring binocular vision or sustained depth perception due to right eye blindness; and (4) a need to avoid hazards such as unprotected heights and dangerous machinery.  (Tr. 40).  In response, Forrest testified that the plaintiff's past work as security guard could still be done both as he actually performed it and as it is performed in the national economy.  (Id.).  The witness also identified a significant number of other jobs which could be performed such as school bus monitor, surveillance monitor, night watchman, ticket taker and attendant, (Tr. 41-42).  Therefore, assuming that the

vocational factors considered by Forrest fairly characterized the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Barry Burchett examined Voyles and noted a diagnostic impression of being status post crush injury to the right hand with amputation of the right middle and right index fingers and fusion of the right thumb and right ring finger and blindness in the right eye. (Tr. 346). Dr. Burchett indicated that the plaintiff would have "minimal" functioning of the right hand. (Id.). The record was reviewed by Dr. Timothy Gregg (Tr. 350-357) and Dr. Parandhamulu Saranga (Tr. 384-391), each of whom opined that the claimant could perform a limited range of light level work, restricted from a full range by (1) a limited ability to push or pull with the upper extremities; (2) an inability to more than occasionally crawl and climb ladders, ropes or scaffolds; and (3) a limited ability to perform handling and fingering. In September of 2008, Dr. Anthony Harris performed an eye examination and noted that Voyles could not see out of the right eye but had 20/20 corrected vision in the left eye. (Tr. 395). Dr. Harris indicated that the plaintiff lacked depth perception. (Id.). The hypothetical factors were essentially consistent with these opinions.

Voyles asserts that the ALJ's reliance upon the opinion of Dr. Burchett was misplaced because the ALJ had previously discredited the opinion. The doctor had stated in text of his report that "range of motion of the joints of the fingers of both hands is normal." (Tr. 345). The ALJ thought that this statement was entitled to little weight in view of the claimant's history of finger amputation on the right hand. (Tr. 103). However, Dr. Burchett also clearly noted the amputations of the right middle finger and right index finger as well as the fusion of the thumb's PIP joint. (Tr. 345). Significant hypertrophy with associated tenderness was noted in the dorsum of the fourth and fifth metacarpals. (Id.). Voyles was reported to have marked difficulty picking up coins with the right hand. (Id.). The physician noted the history of right hand crush injury with finger amputation and right thumb fusion in his diagnostic impression. (Tr. 346). Thus, Dr. Burchett was clearly well aware of the plaintiff's right hand problems. Therefore, the doctor's statement concerning a normal range of motion of the joints in both hands would appear to be no more than a misstatement and does not discredit his entire opinion.

Voyles argues that the ALJ erred in rejecting the opinion of Dr. James Noble. Dr. Noble opined that the plaintiff's right arm was nonfunctional and indicated that he should seek Social Security disability. (Tr. 393). The ALJ indicated that this opinion of a "treating" physician was given little weight because it is inconsistent with the other evidence of record and due to the possibility that as a treating source, Dr.

Noble might be sympathetic to the claimant and, so, try to accommodate his needs. (Tr. 107-108).  The court does find errors with the ALJ's findings regarding Dr. Noble.  The claimant argues that the ALJ's suspicion that the doctor based his findings on sympathy is unsupported speculation and is an impermissible ground to reject his opinion.  The court agrees with Voyles that this would not be good reason to reject the opinion of a treating source.  However, the ALJ also erred in finding that Dr. Noble was a "treating" source.  The doctor indicated that the January 12, 2009 examination was the plaintiff's initial visit.  (Tr. 393).  The current record contains no other evidence of treatment by Dr. Noble.  (See Court Transcript Index). Since the physician only saw the claimant on one occasion, he did not have a long-term relationship with the patient and, so, is not established as a treating source whose opinion would be entitled to superior weight.  Dr. Noble's findings were inconsistent with other evidence of record such as the opinions of Dr. Burchett and the medical reviewers which did support the administrative decision.  Moreover, an opinion that his patient should "get . . . established with Social Security" is not a medical opinion within the physician's expertise.  Therefore, the court finds the ALJ's error in rejecting the opinion of Dr. Noble to be harmless.

Voyles also asserts that the ALJ erred in evaluating his mental condition. The ALJ found that the plaintiff did not suffer from a "severe" mental impairment. (Tr. 103).  The claimant sought treatment for his mental problems at the Kentucky

River Comprehensive Care Center.  (Tr. 358-369, 398-422).  Voyles was diagnosed as suffering from a mood disorder.  (Tr. 369).  Specific mental restrictions were not identified but his Global Assessment of Functioning (GAF) was rated at 65.  (Id.).  Such a GAF rating suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Psychologist Melissa Couch examined the plaintiff and diagnosed an adjustment disorder with depressed and anxious mood and a pain disorder.  (Tr. 325).  Couch also rated his GAF at 65.  (Tr. 326).  Psychologists Ilze Sillers (Tr. 328) and Jane Brake (Tr. 370) each reviewed the record and opined that the claimant did not suffer from a "severe" mental impairment.  These reports provide substantial evidence to support the administrative decision.

Voyles also asserts that the vocational testimony was inaccurate and not consistent with information provided in the Dictionary of Occupational Titles (DOT) and the Specific Occupational Selector Manual, (Second Edition).  The plaintiff cites DOT No. 372.667-034 which indicates a person needs the use of both hands in performing the work of security guard.[1]  Voyles notes that Social Security Ruling

---

[1]Since the plaintiff was properly found to be able to return to his past relevant work as a security guard, the conflicts between the DOT and the alternative jobs are not significant.  However, the claimant's arguments with regard to these positions would also fail for the same reasons.

10

(SSR) 00-4p requires the ALJ to address discrepancies between these vocational sources and the vocational testimony.  Since this did not occur, he argues that the ALJ committed reversible error.  The court notes that the ALJ asked the vocational expert whether her testimony was consistent with the DOT.  (Tr. 43).  Forrest reported it had been consistent with the understanding that the DOT was somewhat obsolete and did not cover several of the issues presented in the case.  (Tr. 43-44).  The ALJ's inquiry was consistent with SSR 00-4p requirements.  The plaintiff did not bring the alleged conflicts between the vocational expert's testimony and the other vocational sources to the attention of the ALJ.  (Tr. 44).  SSR 00-4p does not place an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.  Lindsley v. Commissioner of Social Security, 560 F.3d 601, 606 (6th Cir. 2009).  In Martin v. Commissioner of Social Security, 170 F. Appx. 369, 2006 U.S. App. Lexis 54 61 (6th Cir. 2006), since the claimant did not bring the conflict between the DOT and the vocational testimony to the ALJ's attention, no conflict existed which the ALJ was required to resolve.  The undersigned finds the reasoning of this unpublished decision of the Sixth Circuit Court of Appeals persuasive.  Therefore, the court must reject the plaintiff's argument.

The undersigned notes that Voyles submitted several additional medical records directly to the Appeals Council and the court which were never seen by the

ALJ.   This action raises an issue concerning a remand for the taking of new evidence before the Commissioner.  Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding.  Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  Sizemore, 865 F.2d at 711.  The party seeking the remand bears the burden of showing that a remand is proper under § 405.  Willis v. Secretary of Health and Human Services, 727 F.2d 551 (6th Cir. 1984).

The medical records with which Voyles seeks a remand of the action include treatment notes from the North Georgia Medical Center dated from September of 1989 which were submitted to the Appeals Council.  (Tr. 67-73).  The plaintiff submitted directly to the court documents related to his hospitalization at Eastern State Hospital dated between May 25, 2009 and May 30, 2009 (Docket Entry No.

10, Exhibits No. 9-37) and documents relating to his hospitalization at Hazard Appalachian Regional Hospital dated between January 25, 2010 and February 10, 2010 (Docket Entry No. 10, Exhibits No. 4-8).

The North Georgia Medical Center records are dated well before Voyles's alleged onset date of September 1, 2007.  (Tr. 100).  These records pertain to his original right hand injury which was considered by the ALJ.  Therefore, the court finds that these records were neither "new" nor "material" and, so, they do not support a remand of the action for the taking of new evidence before the Commissioner.

The Eastern State Hospital records relate to a hospitalization which occurred between May 25, 2009 and May 30, 2009, just after the ALJ issued his denial decision on May 1, 2009.  Even though these records were not in existence at the time of the denial decision, the Sixth Circuit Court of Appeals in Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986) found that this fact was not sufficient to meet the "good cause" requirement and the claimant must still show a valid reason why this or similar evidence was not obtained and submitted into the record in a timely fashion.  The Eastern State records concern an exacerbation of the plaintiff's mental problems and revealed a GAF rating of 40 upon admission, indicating the existence of major impairment in several areas of mental functioning.  (Docket Entry No. 10, Exhibit 10).  Voyles asserts that these

records support his claim that his mental problems were more severe than found by the ALJ. However, the Eastern State records also reveal that his condition stabilized and quickly improved, and his GAF was noted to be 65 at the time of discharge, suggesting only mild psychological symptoms. (Docket Entry No. 10, Exhibit 11). Furthermore, upon discharge, the plaintiff was said not to be under the influence of a diagnosable Axis I condition and the hospitalization was noted to relate primarily to his anger over being denied Social Security disability benefits. (Docket Entry No. 10, Exhibit 30). This statement would not suggest the existence of a "severe" mental problem "relating back" to the relevant time period before May 1, 2009. Therefore, the Eastern State records do not provide support for a remand of the action for the taking of new and material evidence.

The Hazard Appalachian Regional Hospital records concern surgery for the removal of a cataract in Voyles's left eye in February of 2010. (Docket Entry No. 10, Exhibit No. 4). The plaintiff's left eye vision  was noted to be 20/400 prior to the cataract removal. (Docket Entry No. 10, Exhibit No. 4). The claimant asserts that this report indicates that his condition would meet the requirements of Section 2.02 of the Listing of Impairments concerning loss of visual acuity which only requires 20/200 vision in order to satisfy the Listing. The defendant asserts that this report indicates a deterioration of the plaintiff's condition after the ALJ issued the denial decision on May 1, 2009 and does not "relate back" to the pertinent time period.

The undersigned must agree with the defendant. The record prior to May 1, 2009 does not indicate that the claimant's vision problems were disabling. Dr. Burchett noted 20/30 vision in the left eye in January of 2008 while Dr. Harris reported best corrected 20/20 left eye vision in September of 2008. (Tr. 344, 395). The September 17, 2008 finding of Dr. Harris is actually closer in time to the May 1, 2009 date of the ALJ's denial decision than the January 26, 2010 date that the left eye vision was noted to be 20/400 at Hazard Appalachian. The claimant testified that he could read with glasses at the April 21, 2009 hearing. (Tr. 10). Thus, the Hazard Appalachian records represent a deterioration in the condition of Voyles and, so, are not "material" to his condition during the relevant time period. Therefore, a remand of the action for the taking of new evidence is not appropriate.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 5th day of April, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**